635 So.2d 337 (1994)
STATE of Louisiana
v.
Roger BATTLE.
No. 93-KA-900.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 1994.
Rehearing Denied May 17, 1994.
*339 Robert Glass, Glass & Reed, New Orleans, for defendant-appellant.
John M. Mamoulides, Dist. Atty., Stephen D'Antoni, Caren Morgan, Dorothy A. Pendergast, Asst. Dist. Attys. (Louise Korns, of counsel), Gretna, for plaintiff-appellee.
Before KLIEBERT, BOWES and GRISBAUM, JJ.
GRISBAUM, Judge.
This criminal appeal relates to a conviction of attempted aggravated rape and aggravated burglary wherein the trial court sentenced the defendant to 50 years at hard labor for attempted aggravated rape and 30 years at hard labor for aggravated burglary, the sentences to run consecutively. We affirm in part, set aside in part, and remand.

BASIC RECORD FACTS AND PROCEDURAL HISTORY
On February 12, 1992, the victim was awakened from her sleep when she felt a man on top of her back and her head pushed into a pillow. She was told she would be killed if she made any noise. The defendant rolled her over, taped her eyes and mouth shut, then tied her wrists and ankles to the bed frame. While she was tied to the bed, the victim could hear the defendant searching through her apartment and turning on the television and bathroom faucet.
During the time the defendant was in her apartment, he placed a set of headphones on the bound victim. The defendant proceeded to play a detailed and graphic tape recording to the victim. The recording described defendant as a "messenger from God" who was sent to administer a "slut test" to the young woman. It was made clear on the recording, the only way for the woman to live would be if she "passed" the test. Refusal to submit, or "failure," would result in the young woman's death. The record indicates the defendant fondled the woman's breast and placed a sharp object against her neck while again threatening to kill her.
About 20 minutes after playing the tape, the defendant removed the victim's clothing and dressed her in a lingerie outfit. She was untied and ordered to stand and strip. As she began to strip, the victim (still blindfolded) heard a noise in the adjacent apartment. Suddenly, she felt the defendant brush against her and run toward the window in the bedroom.
Seizing the opportunity, the victim rushed towards her front door, pulling the tape from her mouth and eyes. As she approached the door, the victim turned and saw the defendant coming towards her. She immediately began to scream and open her apartment door.
Ms. Linda Rosnic, another resident of the apartment complex, heard the victim's screams and went to look out of her apartment window. Ms. Rosnic saw a man pulling up his pants as he ran toward a red pickup truck. Ms. Rosnic described this man to a Jefferson Parish Sheriff's deputy as about six feet tall, medium build, late 20s to early 30s, blonde collar-length hair, wearing a dark sweater, faded blue jeans, and tennis shoes.
The description of the suspect and truck were broadcast by the investigating deputy to other units. About 20 minutes following the attack, a Jefferson Parish deputy, who had heard the bulletin, was driving along I-10. As he approached the Causeway Boulevard Exit (eastbound I-10), he saw a vehicle, matching the broadcasted description, stopped by a state trooper. Given the proximity to the victim's apartment (victim's apartment was at 4309 West Napoleon about two blocks away from the Clearview Parkway I-10 entrance), the deputy stopped.
As the deputy approached the truck, he noticed a blonde haired man (later identified as defendant), who also matched the description that had been broadcasted. At trial, both the state trooper and the deputy testified *340 defendant's mannerisms were extremely anxious. Both police officers also noted how the defendant was sweating profusely on a cold February night when they were wearing jackets.
The man, who matched the description given by Ms. Rosnic, was ordered from the vehicle, frisked, and handcuffed. The man was properly given his rights. Ms. Rosnic was brought to the scene and positively identified defendant as the person she had seen running from the apartment complex.
After the defendant was arrested, a search warrant was obtained for defendant's truck and apartment. A search of the truck resulted in the seizure of several items, including a gold chain, which looked like one missing from the victim's apartment, a pack of Winston cigarettes, pieces of white rope and white surgical tape. At defendant's home, deputies seized Sony cassette tapes, Winston cigarettes, a piece of white rope similar to those found in the victim's apartment and defendant's truck.
While at the victim's apartment, the deputies recovered a tape recorder, a Sony cassette tape, scissors, a blindfold, Winston cigarettes, a cigarette lighter, gloves, nylon rope, white surgical tape, stockings, and a man's shirt. The victim stated she did not own these items and that they were left when the intruder fled.
At trial, three of defendant's former girlfriends identified the voice on the tape, left at the victim's apartment, as that of defendant, Roger Battle. The victim was unable to testify regarding the identification of the defendant because she did not get a good enough look at him. However, at a pre-trial lineup, she identified defendant as one of two men whose voices were similar to her offender.
Through witnesses at trial, defendant attempted to offer a reason for his possession of items matching those left by the offender in the victim's apartment. Defendant's step-father testified the defendant used the rope and tape found in his truck in his landscaping job. The step-father also stated that he believed defendant's three former girlfriends identified defendant's voice because they were angry at him. A 12-member jury unanimously convicted Roger Battle on both counts.

ISSUES
The defendant, in brief, assigns four separate issues:
1. Whether there is sufficient evidence to support the convictions.
2. Whether reversible error occurred when the prosecution misrepresented in the closing rebuttal remarks that it did not possess a tape recording of the defendant to compare with a tape recording submitted in the trial.
3. Whether the trial court erred when it ordered defendant[,] in the presence of the jury, to recite from a transcript of a tape which contained expressly vulgar and intimidating phraseology.
4. Whether the sentence imposed was excessive.
Defendant-appellant's original brief at 13.

ANALYSISISSUE ONE
Our standard of review is controlled by what is commonly referred to as the Jackson review in that we, as the reviewing court, must determine whether, viewing the evidence most favorable to the prosecution, any rationale trier of fact could have found the defendant guilty beyond reasonable doubt of every element of the crimes charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Junior, 542 So.2d 23 (La.App. 5th Cir.1989), writ denied, 546 So.2d 1212 (La.1989).
Defendant herein, in relation to sufficiency, only questions whether his identification as the perpetrator was proven beyond a reasonable doubt. We find the circumstances surrounding the identification do not suggest a substantial likelihood of misidentification in that the circumstantial evidence of the defendant's guilt conclude but are not limited to the following:
*341 (1) Defendant was identified as the man seen pulling up his pants while running from the victim's apartment complex moments after the victim was heard screaming;
(2) Defendant, a man fitting the description of the man seen fleeing, was stopped a few miles from the victim's apartment shortly after the victim escaped;
(3) Defendant was driving a red pickup truck, fitting the description of the truck used by the man seen running away;
(4) A necklace found in defendant's truck looked like the one the victim discovered missing from her apartment, following the burglary;
(5) Several items, including surgical tape, white rope and cigarettes found in defendant's truck appeared to match those items left in the victim's apartment by the perpetrator; and
(6) Defendant, when stopped on I-10, was sweating profusely and had on wet clothes, unusual for the cold night of February 12, 1992.
Defendant asserts that the identification by Ms. Rosnic contains "unexplained inconsistencies" as follows:
(1) Defendant's vehicle was a 1990 model, not 1978-79 as she described;
(2) The color on defendant's vehicle was not faded as she described; and
(3) She testified that the man she saw was wearing white underwear; defendant was not wearing underwear when he was stopped.
Further, defendant points to the victim's failure to identify him or to positively identify his voice during a pre-trial line-up. Finally, he argues that there was no forensic evidence to support the belief that defendant's voice was the voice on the tape recording.
In her testimony, Ms. Rosnic stated the truck she saw was a "faded red pickup truck, full-sized pickup truck, a later model, not very new." Additionally, she stated she saw defendant wearing white underwear as he ran towards his truck. When Ms. Rosnic was taken to a show-up that night, she positively identified defendant's truck as the one she saw, and she identified defendant as the man she saw running towards the truck. Also, nowhere in the record can we find testimonial or documentary evidence that defendant was not wearing underwear the night of the offenses. During his direct examination, defendant's step-father stated he did not know whether or not his son wore underwear. He denied there was a joke that "he [defendant] doesn't own any."
The jury obviously believed Ms. Rosnic's positive identification, despite any alleged minor inconsistencies, such as the brightness of the color and the year of the vehicle. Additionally, we are not persuaded by defendant's argument regarding the victim's inability to positively identify his voice at the line-up and the lack of forensic evidence as to the voice on the tape. Based on all the evidence presented, including the finding of items which appear to match those found in the victim's apartment, the jury was able to conclude the defendant was the perpetrator.
Thus, viewed in the light most favorable to the prosecution, the evidence, both direct and circumstantial, was sufficient to convince a rationale trier of fact beyond a reasonable doubt that defendant committed the aggravated burglary and the attempted aggravated rape.

ANALYSISISSUE TWO
Here, the defendant claims the prosecution misrepresented, in closing argument, that it did not possess a voice exemplar of the defendant from which to conduct a voice comparison with the tape found in the victim's apartment.
The record shows that, during the State's rebuttal closing argument, the assistant district attorney stated:
Mr. Tosh said what you didn't hear from the State was an expert to tell you that the voice on the tapeI don't know where it went exhibit forty-seven, that the voice on the tape was Roger Battle's tape and he said that it's not his burden to prove it; that it isn't his client's voice and he's exactly correct. He said that he does not have the burden. But I want you to think because this is real important folks, I want you to think for a minute what is it the *342 State does not have? The State's got that tape that was found in that apartment alright. But the defendant's own expert told us that in order for us to do a match, we got to have another tape with Roger Battle's voice on it. And we didn't have that. We didn't have that. We have proof beyond a reasonable doubt on every single element of this crime, every single element....
We note that, at the evidentiary hearing on the motion, William Rester, a private investigator, was called by the defendant. Mr. Rester testified that he investigated defendant on behalf of three women. The women gave him tapes containing a voice which they identified as that of the defendant. However, he did not conduct any scientific analysis on the tapes to verify that the voice was that of defendant, and during this investigation, he met with members of the district attorney's office and informed them he had various tape recordings of defendant. The representatives kept one of the tapes.
The law is well-settled that the proposed newly discovered evidence must not only be newly discovered but not discoverable by reasonable diligence before the verdict for it to justify the granting of a new trial. The decision on a motion for a new trial rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. See State v. Quimby, 419 So.2d 951 (La.1982), and authority therein.
The trial court here found that evidence of defendant's guilt was overwhelming and denied the defendant's motion for new trial. Based on the evidence of the defendant's guilt discussed previously in the analysis of Issue One, we see the trial judge did not abuse this discretion.

ANALYSISISSUE THREE
The defendant argues the trial court's order that he provide a voice exemplar in the presence of the jury, by reading from a transcript of the tape found in the victim's apartment, was prejudicial and violated his Fifth Amendment privilege against self-incrimination. Defendant admits that, generally, a voice exemplar does not violate the Fifth Amendment's privilege against self-incrimination. See United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970). However, he contends that ordering him to recite the language that was vulgar and intimidating was inflammatory. We disagree.
Bodily evidence of a physical nature violates no privilege against self-incrimination and neither does testimony of a refusal to give bodily evidence violate that privilege. See State v. Dugas, 252 La. 345, 211 So.2d 285 (1968).
We note that, because it was unquestionable that the defendant could be compelled to exhibit his physical characteristics, which do include the utterance of statements to display his voice as an identifying characteristic, his refusal to follow the trial court's order and read from the transcript was also admissible. The defendant contends that ordering him to recite language that was vulgar and intimidating was inflammatory. The defendant refused to provide the voice exemplar; thus, he was not heard by the jury saying the "vulgar" language. Furthermore, the jury heard the same language several times during the trial. When the tape was played for the jury and introduced as an exhibit, each juror was given a transcript to read while listening to the tape. Moreover, parts of the tape were played during the examination of several witnesses when they were asked to identify the voice. Ergo, we find no error.

ANALYSISISSUE FOUR
The defendant argues that his sentences were excessive. The State, in brief, contends that defendant failed to file a Motion to Reconsider pursuant to the La.Code Crim.P. art. 881.1 and is thus precluded from raising the claim of excessiveness. In the reply brief, defendant argues that the requirements of La.Code Crim.P. art. 881.1 were met when defense counsel orally moved to appeal the sentence. La.Code Crim.P. art. 881.1(D) provides:

*343 Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
After defendant's sentencing, defense counsel stated as follows: "Your Honor, at this time, we please note for the record our intention to file an appeal, both on the conviction and punishment imposed in this case. This motion will bewe ask leave to supplement in writing."
In spite of the pathetic and sloppy procedural posturing by defense counsel at the sentencing hearing, we will, nevertheless, address the question of "excessiveness" in light of the blatant error patent that is self-evident.
The record shows the defendant received the maximum sentences for each conviction, and our jurisprudence is replete in stating that the trial court is given wide discretion in imposing the sentence within the statutory limits, and a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. See State v. Howard, 414 So.2d 1210 (La.1982); State v. Sepulvado, 367 So.2d 762 (La.1979) Maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La. 1982).
However, it appears the maximum sentences were fully justified by the circumstances of the crimes and the history of this defendant. The record also shows the trial court referred to the sentencing guidelines and its belief that defendant would have killed the victim but for the noise from the adjacent apartment at the time the crime was being committed. Our review, particularly the victim's testimony and the tape that defendant recorded and played for the victim, certainly supports the trial court's Reasons for the maximum sentences. No doubt in our mind, this victim was terrorized by defendant's actions during the incident and for a substantial time thereafter. Ergo, this assignment lacks merit.
Importantly, we see the trial court's sentence on Count 2 is for the defendant to serve the first year of his 30-year sentence without benefits of parole, probation or suspension of sentence. Clearly, the aggravated burglary statute, La.R.S. 14:60, does not provide that the sentence may be imposed without benefit of parole, probation or suspension of sentence. Thus, this is an obvious error patent on the face of the record, which renders defendant's sentence for aggravated burglary to be illegal. The remainder of this sentence is free from error. Accordingly, we must remand the matter for resentencing.
For the reasons assigned, the trial court's conviction of the defendant is hereby affirmed. Additionally, the trial court's sentence for attempted aggravated rape is likewise affirmed, and the trial court's sentence for aggravated burglary is hereby set aside. The matter is remanded for resentencing.
AFFIRMED IN PART, SET ASIDE IN PART, AND REMANDED.