pBOWES, Judge.
Defendant, Raymond R. Hayden, appeals his conviction for false impersonation of a police officer. For the following reasons we affirm.
Hayden, and co-defendant, Lionel P. Big-gers, were charged by bill of information with violating La. R.S. art. 14:112.1 by impersonating peace officers between July 23,1995 and October 23, 1995. Following trial on June 26,1996, the jury found the defendants guilty as charged. Defendant Hayden filed a motion for new trial which the trial court denied. Subsequently, the defendants were *1361 sentenced to one year in the Jefferson Parish Correctional Center, which sentence was suspended. Defendants were placed on active probation for one year with special conditions, that he:
1. Pay a probation supervision fee of $20.00; and
2. Comply with the thirteen conditions of probation.
The present appeal was taken only by Hayden.

EVIDENCE AND TESTIMONY

At trial, Paul Machadie testified that he was employed as a sales clerk at a Shell Oil gas station on Barataría Boulevard on October 23, 1995. It was the station’s policy to give away free soft drinks or coffee, and free car washes, to police officers as a courtesy. He was not permitted to give away such courtesies to bounty hunters.
The witness identified Hayden as the defendant who drove up to the store on the night in question in a white Ford Crown Victoria and came into the store asking for a wash for his police car. The car looked like a police ear because it had blue lights in the back window. He identified photos of the vehicle and of the defendants, which photographs were admitted at the trial.
After the witness gave him the “police wash,” defendant got a drink and told Big-gers to come in and get a drink also. Neither paid for the beverages. Machadie had seen them on previous occasions when they had come in to ask for a wash for their police car. When anyone got a car wash, it was company policy to write down the number of the wash and whether it was for the police. The defendants did not,identify themselves as bounty agents; but their uniforms (black fatigues) looked similar to those of the Jefferson Parish Street Crimes unit, located across the street from the service station. They also had guns and badges and so he assumed they were street crimes officers.
|gOn cross examination, the witness stated that the defendants did not directly tell him that they were police officers but only asked for a police wash. A regular car wash costs $5.00 or $3.00 with a fill up. Though the car was unmarked, the witness knew that some police cars do not have identifying marks. The Street Crimes officers have the words “Street Crime” written on black tee shirts, but the black fatigues being worn by defendants are unmarked.
Captain Shane Guidry, a reserve deputy of the Jefferson Parish Sheriffs Office in Street Crimes, testified that his unit wears black battle fatigues with a sewn-on badge with “Sheriff’ written across the back with black and grey patches on the shoulders, black fatigue pants, black boots, gun belt, and vest. The shirt worn by defendant was the same as the battle dress worn by the Street Crimes Unit except that the shirt did not contain the Sheriffs Office logo. If a hat is worn (they are optional) it is a black baseball type hat with the word “Sheriff’ on it. On the night in question he and another deputy stopped at the Shell Station to purchase cigarettes and observed the defendants exiting the station dressed in the same way they were; and he stated that he did not recognize the defendants as being from a police agency.
When the defendants finished in the car wash, Deputy Guidry observed that their auto, a white Ford Crown Victoria with blue lights and a prisoner cage divider, had an expired Alabama license plate. A traffic stop Lwas effected, at which time Captain Guidry read their chest badges which said “United States Fugitive Recovery Task Force.” The defendants told the officers that they worked for Louisiana Bail Bonds Recovery Agency. The witness then asked the men for identification and both defendant and Biggers produced billfolds containing, identification that read “in some way” as “State of Louisiana Recovery Agent” or “Fugitive Recovery Agent.” The badges worn on the defendants’ chests read “United States Fugitive Recovery Task ■ Force.” They advised the deputies that they ordered their badges out of a magazine and had their IDs made at Kinko’s (a copy service).
On cross-examination, Deputy Guidry testified that the defendants did not attempt to tell the deputy that they were police officers.
Lieutenant Kaufman, also a reserve officer with the Sheriffs Office, was with Lieutenant Guidry on the night in question. He testified to essentially the same facts as did Lieuten *1362 ant Guidry. One of the defendants (he did not remember which one) admitted that he was not licensed or insured as a bail bondsmen, nor was he commissioned by the state. The license plate on the defendants’ vehicle was run. Additionally, Lieutenant Kaufman identified state’s Exhibit 5B as a Gretna Police wallet that had the City of Gretna star on the outside and contained defendant’s identification inside of the wallet. The guns, badges, uniforms, weapons, and the car I slights and cage lead him to believe that some type of criminal activity was about to take place.
After interviewing the store clerk, the defendants were arrested for impersonating police officers. From his training in the police academy, Lt. Kaufman testified that one must be employed by the Federal Government before a badge with the words “United States” can be used. The only difference between the sheriff’s uniform and the defendants’ outfits was the lack of the sheriffs badge on the front and the sheriffs decal on the back.
On cross-examination he stated that the store clerk told him the defendants had identified themselves as police officers. Undercover police vehicles usually carry out of state plates that come back to the agency, not to a registered owner as in the present ease.
Defendant Lionel Biggers testified that in 1995 he was employed as a bail enforcement agent with different bail bonding companies around the city, and that he was a licensed bail bondsman. He and the defendant Hayden had a business, United States Fugitive Recovery, in which they traveled the country tracking down fugitives. He stated that no license is required to be a bounty hunter.
Biggers also testified that the car belonged to Hayden, and that the Jefferson Parish Sheriffs Office Eastbank Motorpool had donated the car. Biggers said that he was driving the car that night and that they were on their way to the Desire Housing Project to pick up a prisoner. Biggers |6testified that he went inside the Shell Station and asked for a car wash; the clerk printed up the ticket and Biggers pulled out his wallet to give him money for the car wash. Biggers testified that the clerk said, “Don’t worry about it.” He thanked the clerk and then left the store.
Biggers further testified that he did not get a soft drink and that he did not tell the clerk that he was a police officer. They wore the black fatigues when they went to pick up prisoners to get some respect, because they had been shot at three times in the projects when they went in wearing jeans and tee shirts.
Hayden testified that he did not enter the Shell station that night, but stayed outside to talk to some people who were going to accompany them to the housing project. He testified that he never identified himself as a police officer. He further testified that he did not receive a soft drink that night and that there were no soft drinks in the car when they were stopped by the officers. The reason they wore the black uniforms was as Biggers had testified, for their protection when they went into a housing project to recover a prisoner.
He also testified that he put the blue lights in the car so that if he was in trouble in the projects, he could use it to signal to the police for help, that a deputy coming through there may see them and come that way thinking police were there. He admitted that he wanted people to assume he was “some type of law enforcement” but not police. He further testified that he 17had never used the car to arrest anyone or stop anyone who did not have a forfeiture notification on them.

ASSIGNMENT OF ERROR NUMBER ONE

Defendant urges that the trial court erred in denying the appellant’s motion for a mistrial after the State of Louisiana referred to other crimes evidence during its opening statement.
Defendant contends that the trial judge improperly denied his motion for a mistrial made after the prosecutor referred in the opening statement to Paul Marchadie’s anticipated testimony that the defendant had previously been to the Shell station. The following exchange occurred during the state’s opening statement:
*1363 (THE STATE):
You’ll then here (sic) from Captain Shane Guidry, who’s a deputy, reserve deputy with the Jefferson Parish Sheriffs Office, who’s working that night along with his partner Lieutenant Mark Kaufman. He said they see these guys wearing the exact same uniforms they wear, and getting into a car that looks like a police unit except it’s got an Alabama plate on it that’s expired. They’ve been police officers for five, six years, they’ve never seen these guys. Here’s a police looking car with a Alabama plate that has an expired tag. They begin investigating. They confront these individuals and they said, what’s going on? Why do you have guns? First they secure them from out of the car. They took the guns away from them. They identified themselves, they say, oh, we’re bounty agents. They say, are you working right now? No, not yet. Are you licensed? No, not yet. Where did you get the badges from? Out of a magazine. Where did you get your I.D. cards from? We made them at | gKinko’s. They then went and interviewed Paul Marchadie at the Shell station? And he told them just what I told you. Yep, they’ve come in several times. They always identified themselves—
MR. TOSH:
Your Honor, I object. May we approach? (BENCH CONFERENCE)
MR. TOSH:
Your Honor, in connection with this we had discussion in chamber before trial that the prosecution was going to limit its testimony or questioning to that particular night, and if it was going to go beyond that I was going to argue prieur (sic). There was no prieur (sic) hearing. Nothing to indicate that anything else was going to be admissible at this trial. I object and I move for a mistrial.
MR. KELLY:
Just in response Judge, the bill of information which was just read to the jury specifies, which occurred between July of 1995 and October 28,1995.
THE COURT:
In addition, the agreement was that that (sic) night the testimony of the individual who was on duty he could be asked certain questions and was not limited to just that night. Thank you.
MR. TOSH:
He’s— now he’s saying what they’re going to testify to. Having a question and having the district attorney in opening statements make that statement is two totally different things.
bMR. KELLY:
That’s what a(sic) opening statement is.
Defendant contends that the prosecutor’s statement constituted an impermissible reference to another crime committed by defendant. Defendant urges that a mistrial was mandated by La.C.Cr.P. art. 770 because this testimony constituted inadmissible evidence of other crimes. The state responds that the prosecutor’s reference was not a reference to another crime, but to this crime, since the bill of information alleged that defendant committed this crime between July 23, 1995 and October 23,1995.
La.C.Cr.P. art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
*#**:{:*
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
‡ ‡ ‡ ‡ ‡
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
ha A mistrial is a drastic remedy which should be declared only when unnecessary prejudice results to the accused. State v. Banks, 96-2227 (La.4/18/07), 692 So.2d 1051, 1052; State v. Carter, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 350.
We do not find that the complained of remarks refer to evidence of another crime *1364 ■within the meaning of La.C.Cr.P. 770. In light of the fact that the prosecutor did not complete his statement and did not return to that train of thought, it is questionable as to whether the portion of the statement in question can even be taken as a reference to crime. Moreover, the bill of information charged the defendant with committing false personation of a peace officer between July 23, 1995 and October 23, 1995, not solely on the night the defendant was arrested; the defendants’ testimony indicated that they had dressed in the same way and used the same vehicle on other occasions. Therefore, the reference was to the crime for which defendant was charged and currently being tried and not to another crime. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

Defendant urges that the trial court erred in denying the appellant’s motion for a new trial premised upon insufficient evidence.
The decision on a motion for a new trial rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. State v. Quimby, 419 So.2d 951 (La.1982); State v. Battle, 93-900 (La.App. 5 Cir. 3/29/94), 635 So.2d 337. The defendant actually argues in brief that the evidence produced at trial was insufficient to prove specific intent to defraud or to obtain or secure any special privilege or advantage. Defendant urges that his testimony presented a plausible explanation for being attired in the black fatigues and that the uniform was distinguishable from Street Crimes Unit uniforms. The state responds that it proved that defendant had the requisite intent because the jury heard testimony that defendant asked for and obtained a free ear wash and soft drink. The state further contends that defendant admitted his intent when he testified that he wanted people to assume that he was “some type of law enforcement.”
The often cited standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 816, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
A determination of the weight of evidence is a question of fact which rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La. 11/27/95), 663 So.2d 27, 35. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. State v. Silman, supra, 663 So.2d at 35.
Defendant was convicted of false person-ation of a peace officer in violation of La. R.S. 14:112.1, which provides in pertinent part:
112.1. False personation of a peace officer
A. False personation of a peace officer is the performance of any one or more of the following acts with the intent to injure or defraud or to obtain or secure any special privilege or advantage:
(1) Impersonating any peace officer or assuming, without authority, any uniform or badge by which a peace officer is lawfully distinguished.
(2) Performing any act purporting to be official in such assumed character.
(3) Making, altering, possession, or use of a false document or document containing false statements which purports to be a training program certificate or in-service training certificate or other documentation issued by the Council on Peace Officer Standards and Training, pursuant to R.S. 40:2405, which certifies the peace officer has successfully completed the requirements necessary to exercise his authority as a peace officer.
There is only one reported Louisiana decision that has interpreted this statute, State v. Mayberry, 95-2013 (La.App. 4 Cir. *1365 9/4/96), 680 So.2d 722. Mayberry held that false personation of a peace officer is a spe-cifíc |i3intent crime. Id., at 724. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Although intent is a question of fact, it need not be proven as a fact, but may be inferred from the circumstances of the transaction. State v. Snyder, 97-226 (La.App. 5 Cir. 9/39/97), 700 So.2d 1082; State v. Page, 96-227 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, 106, writ denied, 96-2543 (La.9/19/97), 701 So.2d 153.
We find that in the case before us, the state did introduce sufficient evidence to support defendant’s conviction.
Considering all of the testimony, we find that the state proved the requisite specific intent. We especially consider the testimony of the defendant who admitted that the purpose of the uniform was to cause the assumption that he was some type of law enforcement and that the purpose of the blue light was to have a deputy assume the defendants were the police in ease they got into trouble in the projects. These actions fulfill the elements'of La. R.S. 14:112.1(A)(1).
As to the element of intent to defraud or obtain a special privilege or advantage, although the defendant testified that he did not go into the store that night, Mr. Macha-die testified otherwise, i.e., that defendant asked for a wash for his police car and got a drink for which he did not pay, as explicated above.
|14Where there is conflicting testimony as to factual matters, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, and the credibility of witnesses will not be weighed again on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052. Viewing the evidence in a light most favorable to the prosecution, as we are bound to do, we find the state proved the essential elements of the crime beyond a reasonable doubt. This assignment of error is without merit.

PATENT ERROR REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983).
In so doing we find that the record reflects that the trial court failed to completely advise defendant of the prescriptive period in which to file for post-conviction relief at sentencing as required by La.C.Cr.P. art. 930.8. Therefore, we will remand the case to the district court and do hereby order the trial judge to inform the defendant/appellant, Hayden, of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this Court’s opinion and to file written proof in the record that defendant received such notice. State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289, 1291.
hWe further note that the thirteen specific conditions of defendant’s probation are not reflected on the commitment. Generally, where there is a discrepancy between the minute entry and transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732 (La.1983); State v. Haynes, 96-84, (La.App. 5 Cir. 6/25/96), 676 So.2d 1120, 1123. Therefore, we do hereby order that the commitment be amended to reflect all of the conditions of probation in conformity with the transcript. In a similar vein, see State v. Bailey, 94-76 (La.App. 5 Cir. 6/28/94), 639 So.2d 860.

DECREE

For the foregoing reasons, defendant’s conviction is affirmed. The trial court is ordered to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this Court’s opinion and to file written proof in the record that defendant received such notice.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.