BROWN, Chief Judge.
 

 bin a three-count bill of information, defendant, Garrett Barton, was charged with violating La. R.S. 14:112.1, false per-sonation of a peace officer; La. R.S. 14:110, simple escape; and, La. R.S. 14:62.3, unauthorized entry of an inhabited dwelling. A jury returned verdicts of guilty as charged on all counts. Thereafter, the court imposed hard labor sentences of two years for false personation; six years for unauthorized entry, concur
 
 *715
 
 rent with the first sentence; and five years for simple escape, consecutive with the other two sentences. Defendant was granted an out-of-time appeal.
 

 On appeal, defendant claims that there was insufficient evidence to convict him on the false personation and unauthorized entering charges. He does not, however, challenge the sufficiency of the evidence on the simple escape conviction. Defendant also claims that his sentences are excessive. We AFFIRM.
 

 Discussion
 

 Sufficiency of Evidence
 

 Defendant first argues that the evidence presented at trial was legally insufficient to support convictions of false personation of a peace officer and unauthorized entry of an inhabited dwelling.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not | ¡¡provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.02/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/04/96), 680 So.2d 1165. Appellate courts do not assess the credibility of witnesses or reweigh evidence, but accord great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 False Personation of a Peace Officer
 

 La. R.S. 14:112.1 provides, in pertinent part:
 

 A. False personation of a peace officer is the performance of certain acts with the intent to injure or defraud or to obtain or secure any special privilege or advantage. The specified acts include:
 

 (1) Impersonating any peace office or assuming, without authority, any uniform or badge by which a peace officer is lawfully distinguished.
 

 (2) Performing any act purporting to be official in such assumed character.
 

 (3) Equipping any motor vehicle with lights or sirens which simulate a law enforcement vehicle.
 
 [1]
 

 False personation of a peace officer is a specific intent crime.
 
 State v. Hayden,
 
 97-1070 (La.App. 5th Cir.02/25/98), 707 So.2d 1360,
 
 writ denied,
 
 98-0811 (La.09/04/98), 723 So.2d 960. Intent may be inferred from the | ^circumstances of the transaction.
 
 State v. Hayden, supra.
 
 In
 
 Hayden,
 
 we note that the defendant was a “fugitive recovery agent” who “asked for a wash for his police car (a white Ford Crown Victoria equipped with lights) and got a drink for which he did not pay ...”
 

 In the case
 
 sub judice,
 
 Garrett Barton lived with Sara Henry at the Towne Oaks South apartments (“Towne Oaks South”) in Shreveport, Louisiana, and was known by residents to dress and act as a police officer. Several months
 
 *716
 
 prior to his eventual arrest, Barton approached Nancy Jowers, property manager for Towne Oaks South, about his interest in becoming a courtesy officer for the complex. Jowers would later testify that courtesy officers received a reduction in rent for their service, but the position was reserved for licensed law enforcement officials. Barton told her that he worked for the FBI, and though Jowers could not remember his exact attire on this occasion, she testified that he was wearing a badge and driving a Ford Crown Victoria that had “police-looking” lights mounted on it.
 

 Also, while living at Towne Oaks South, defendant came to socialize with another resident, Lindsey Vallot, as well as her boyfriend, Joseph Givens. On their first meeting, Barton approached the two with a flashlight as they were talking in the parking lot. Givens felt as though Barton was “taking control” of the situation as a police officer would. Vallot and Givens believed Barton was a police officer.
 

 One morning Vallot was in her apartment alone, taking a shower, when she heard someone pounding on the door and a voice shouting, |/‘Police! Open up.” Val-lot emerged from the shower to find the front door open and Barton, dressed in police attire, with his head inside her apartment. After seeing and briefly speaking with Vallot, defendant stepped back and shut the door. Vallot and Givens both offered testimony that Barton did not have permission to enter the apartment. Later, Givens, through a text message, questioned Barton about the intrusion. Barton then appeared at the apartment, again dressed like a police officer, and ordered Givens outside. Barton demanded Givens’ driver’s license so that Barton could check it for outstanding warrants. Givens complied, and Barton returned the license without further issue.
 

 On April 30, 2009, brothers Clint and Cody Hooker were sitting on a car and listening to music while in the Towne Oaks South parking lot. They observed Barton make a circuit of the complex, then briefly go into his apartment before emerging again. Barton, wearing a gun holster and a badge, approached the brothers and chastised them for playing music too loudly, asking, “Do we have a problem?”
 

 Also, on April 30, 2009, Constable Eric Hatfield responded to a complaint about a man dressed as a police officer harassing people at Towne Oaks South.
 
 [2]
 
 Upon arriving at the complex, Constable Hatfield observed defendant driving his Ford Crown Victoria, which was equipped with a police cage, a push bar on the front bumper, spotlights fixed on the side of the front doors, and a decal on the side with the seal of the United |aStates that read “Fugitive Recovery Agent.” Upon stopping Barton, Constable Hatfield noted that he was wearing a badge with the seal of the State of Louisiana. Constable Hatfield questioned defendant about his status as a police officer. Barton admitted that he was not a police officer, but he maintained that he was deputized as a fugitive recovery agent and could make civilian arrests.
 

 Barton consented to a search of his vehicle. A nightstick, a one-way police scanner, various items from a coroner’s office, and handcuffs were discovered in defendant’s car. Officers also observed toggles and switches which are used to control a police light bar. Following the search, defendant told Constable Hatfield that he and his partner, Shane Lewis, would pose as police officers to make traffic stops,
 
 *717
 
 during which they would take drivers’ licenses and pretend to check for outstanding warrants. Barton also stated that he and his partner would take money and drugs from some of the motorists they stopped. Constable Hatfield
 
 Mirandized
 
 Barton, handcuffed him, and placed him in a police cruiser while police inventoried items in the vehicle.
 

 While Barton was being questioned, Sara Henry, variously described as Barton’s wife or girlfriend, arrived and gave police several articles of Barton’s clothing which were either very similar or identical to Shreveport Police Department (“SPD”) uniform clothes. Henry also gave police consent to search her apartment where she and Barton resided. The officers discovered several photographs of Barton holding a gun and dressed as an SPD officer, appearing to make an entry into a home. Also recovered were 16a police “rig” belt, webbing, radio case, side arm holster, and two air guns which were very close replicas of police-issue firearms.
 
 [3]
 

 While officers were taking inventory of the evidence and filling out paperwork, Barton was able to move his hands from behind his back to the front of his body. He reached through the open window of the cruiser, opened the door, and escaped. He was apprehended approximately three hours after his escape.
 

 Barton would dress in police clothing and carry accessories, such as handcuffs and weapons. He purposely led the complex manager and others to believe he was employed as a law enforcement officer. He drove a vehicle outfitted like a police cruiser. Specifically, when confronted by Givens about the entry into Vallot’s apartment, Barton, wearing police garb and a badge, ordered Givens to follow him and surrender his driver’s license so that defendant could “check for warrants.” Defendant also wore police clothing when he pounded on Vallot’s door demanding she “open up,” and then entered the apartment without consent. Cody and Clint Hooker testified about defendant’s intimidation when he confronted them about playing music in the parking lot. This testimony, along with a myriad of photographs and other physical evidence, is more than sufficient, viewed in the light most favorable to the prosecution, to support a conviction for false personation of a peace officer.
 

 |
 
 -¡Unauthorized Entry of an Inhabited Dwelling
 

 Under La. R.S. 14:62.3, unauthorized entry of an inhabited dwelling is “the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.”
 

 Defendant’s primary argument is that he was previously acquainted with Vallot when he made entry into her apartment.
 
 [4]
 
 Barton also points to trial testimony from Vallot where she responded to a question about whether he had consent to enter the apartment by saying, “I guess technically not.” Barton also notes Vallot testified that the event was “kind of uncomfortable, but it wasn’t — I didn’t feel necessarily completely threatened.” However, the sum of Vallot’s testimony was that Barton did not have her consent when he opened the door and “stuck his head in” the apartment. That two people know one another
 
 *718
 
 socially does not grant either party the right to enter the dwelling of the other absent consent. Further, Vallot could not know even that it was Barton knocking, as the only identification he offered with his knock was, “Police, open up!”
 

 Alternatively, defendant also argues that Vallot’s boyfriend, Joseph Givens, had asked Barton to “check on” his girlfriend because another resident at the apartment complex had been “giving her problems.”
 
 [5]
 
 Givens testified, however, that he never gave Barton permission to enter the 18apartment, which belonged to Vallot. Givens was unsettled by the incident and contacted Barton, questioning him about the event. This led to the threatening behavior by Barton, which was when he required Givens to come outside and turn over his driver’s license for an outstanding warrant search.
 

 Based on the foregoing, we hold that the evidence adduced at trial, viewed in the light most favorable to the state, was sufficient to support the jury’s finding of guilt for unauthorized entry of an inhabited dwelling.
 

 Excessive Sentence
 

 Defendant claims that the sentences imposed by the trial court are excessive, in violation of Article I, § 20 of the Louisiana Constitution of 1974, which provides, in pertinent part: “[n]o law shall subject any person to ... cruel, excessive, or unusual punishment.”
 

 Appellate review of sentences for alleged excessiveness is a two-pronged inquiry.
 
 State v. Ashley,
 
 45,563 (La.App.2d Cir.09/22/10), 48 So.3d 332. First, the record must show that the sentencing court complied with La. C. Cr. P. Art. 894.1 by establishing a factual basis for the sentence.
 
 Id.
 
 The second prong is constitutional excessiveness. A sentence violates La. Const. Art. l, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no | treasonable contribution to acceptable penal goals.
 
 State v. Guzman,
 
 99-1528, 99-1753 (La.05/16/00), 769 So.2d 1158;
 
 State v. Ashley, supra.
 

 A trial court has broad discretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive.
 
 State v. Kidd,
 
 45,638 (La.App.2d Cir.11/03/10), 55 So.3d 90.
 

 Persons committing the crime of false personation of a police officer are subject to a maximum fine of $1,000, a maximum of two years’ imprisonment with or without hard labor, or both. La. R.S. 14:112.1(B). For the crime of unauthorized entry of an inhabited dwelling, a person is subject to a maximum fine of $1,000, or imprisonment with or without hard labor for a maximum of six years, or both. La. R.S. 14:62.3(B). A detained person who commits simple escape in violation of La. R.S. 14:110 shall be imprisoned for at least two years, but not more than five years, with or without hard labor, and such sentence may not run concurrent with any other sentence.
 

 In this case, defendant was sentenced to two years at hard labor for false person-ation; six years at hard labor for unauthorized entry, concurrent with the first sentence; and five years at hard labor for
 
 *719
 
 simple escape, consecutive to the other sentences.
 

 The trial court required sentencing briefs from the ADA and defense counsel. The trial court reviewed the factors listed in La. C. Cr. P. art. 894.1. The trial court emphasized the repetitive nature of defendant’s behavior in this community, as well as in other jurisdictions. Barton had a | inconviction in the state of Utah for burglary and a third degree felony conviction in Texas “for attempted restricted person in possession of a dangerous weapon” and for impersonation of an officer.
 

 The trial court opined that the actions of defendant put both himself and the public in great danger. Defendant admitted to police that he and his partner would rob motorists of money and drugs. The trial court also noted that Barton’s entry into Vallot’s apartment was facilitated by his personation of a police officer.
 

 The harm to society presented by these crimes is not limited to the direct distress or injury caused by Barton personating an officer for his personal benefit. The harm also includes damaging the public’s trust in law enforcement, which is vital for those agencies to function efficiently and effectively in protecting the public.
 

 Given the nature and extent of defendant’s actions and their harm to society, we cannot say the trial court manifestly abused its discretion in sentencing. Therefore, we hold that these sentences are not excessive by constitutional standards.
 

 Conclusion
 

 For the reasons set forth above, the defendant’s convictions and sentences are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . La. R.S. 14:112.1 was amended by the Legislature in 2009 to “provide for definitions of ‘badge’ and ‘peace officer’; and to provide for related matters.” See La. Acts 2009, No. 157. The amendment is not applicable herein, as the offenses for which defendant was charged occurred before the statute was amended.
 

 [2]
 

 . Hatfield was an elected constable for Ward 8 Caddo Parish and a commissioned law officer.
 

 [3]
 

 . There was testimony at trial that a gun brandished by defendant in photographs was not a replica but an actual firearm. However, this weapon was not recovered in the investigation.
 

 [4]
 

 . Vallot, along with her boyfriend, offered testimony that they had “hung out” with Barton at their apartment and even went out to dinner with him on one occasion.
 

 [5]
 

 . It is unclear from the trial record when the request from Givens occurred relative to Barton's entry into the apartment.