Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,952-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

REGINALD RUFFINS                            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 390,262

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

JASON W. WALTMAN
REBECCA A. EDWARDS
COURTNEY RAY
Assistant District Attorneys

* * * * *

Before STEPHENS, THOMPSON, and ELLENDER, JJ.

THOMPSON, J., concurs in the result.

**STEPHENS, J.**

This criminal appeal arises out of the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable Donald Hathaway, Jr., Judge, presiding. Defendant, Reginald Ruffins, charged by an amended bill of information with false personation of a peace officer, unauthorized entry of an inhabited dwelling, and false imprisonment with a dangerous weapon, was convicted by a unanimous jury of false personation of a peace officer and misdemeanor false imprisonment. He was thereafter adjudicated a fourth felony offender and sentenced as such to 20 years at hard labor with credit for time served. Ruffins was also sentenced to six months on the misdemeanor false imprisonment charge to be served concurrently with the 20-year hard labor sentence. Ruffins has appealed his conviction for false personation of a peace officer, urging that the evidence introduced by the State was insufficient to prove the requisite elements of the offense; the introduction of other crimes evidence was erroneous; and the 20-year hard labor sentence imposed by the trial court is unconstitutionally excessive.

For the reasons set forth below, having found merit to Ruffins' first assignment of error, we reverse the defendant's conviction for false personation of a peace officer and render a judgment of acquittal, reverse his adjudication and as a fourth felony offender, and reverse and set aside his 20-year sentence as a fourth felony offender.

## FACTS/PROCEDURAL HISTORY

Ruffins' charge of false personation of a police officer arises out of the following facts. Erica Kennedy is the property manager for the Cooper Road Plaza, an apartment complex in Shreveport, Louisiana. Ruffins, who is the owner of Guardian Task Force, contacted Ms. Kennedy seeking a

contract to provide security work for the apartments she manages. Ruffins provided Ms. Kennedy with an estimate in the form of a proposed contract. Ms. Kennedy told Ruffins that the approval for such a contract would have to come from her supervisor. According to Ms. Kennedy, after she told Ruffins that she did not have the authority to sign the contract, which her supervisor had not approved, Ruffins came back to the complex. Ms. Kennedy testified that she provided Ruffins with a copy of the rent "roll" for the apartment complex.

According to Ms. Kennedy, Ruffins identified himself as a Shreveport police officer. She stated that he was dressed in all black, with a vest and body camera; it was her impression that he was a police officer. However, Ms. Kennedy conceded that Ruffins' clothing did not have any labels on it, just his name on the top of the shirt. She recalled seeing a badge around Ruffins' neck at least once. Ms. Kennedy testified that Ruffins came by to talk to her three or four times; on one occasion he was wearing regular clothes. On June 22, 2022, Ruffins told Ms. Kennedy he was going to visit some of the properties with his guys and remarked that it was "going down" or "about to go down now."

Police responded to a call at the Cooper Road Plaza Apartments on June 22, 2022, a few days after Ruffins' first contact with Ms. Kennedy, regarding a complaint that Ruffins and his employees had entered an apartment, then questioned and detained its occupants.[1] Detective Jeff Brown, one of the responding officers on June 22, 2022, described the

---

[1] These actions resulted in the charges against Ruffins for unauthorized entry of an inhabited dwelling and false imprisonment with a dangerous weapon. On appeal, Ruffins has only challenged the sufficiency of the evidence to support his conviction for false personation of a peace officer.

clothing worn by Ruffins and the car he was driving.[2]  There is also body camera footage of the conversation Det. Brown had with the residents of the apartment.

The State also introduced into evidence at trial a duty rig belt, a ballistic vest which had the word "agent" across the back, law enforcement crime scene tape, a flashlight, one set of handcuffs, a collapsible baton, pepper spray, nine magazines for a 9mm gun, and a radio, a gold badge with a badge number and the words "Chief Agent, Guardian Task Force" on it, and a body camera which had recordings that were later downloaded.

Sergeant Hannah Clark also testified as to Ruffins' appearance on June 22, 2022.  Sgt. Clark described Ruffins and the two people with him as wearing uniform-like tactical pants and outer vests "like you see officers wear."  Ruffins told her that he was there working for the apartment complex.  At trial, Ruffins testified that he was working from information Ms. Kennedy provided as to what apartments might have guns or drugs in them or be occupied by squatters.  Ruffins also stated that he had talked to Ms. Kennedy multiple times and had sent a contract for his company to provide security services at the complex.

Ruffins' description of his clothing on June 22, 2022, was a polo shirt with his name and company logo.  He denied telling anyone that he was a

_____

[2] Det. Brown described Ruffins and the individuals with him as armed with extra magazines, patches, ballistic armor, and wearing shirts and pants "like what a law enforcement officer would wear."  Looking at the photographs of Ruffins' vehicle introduced into evidence, Det. Brown pointed out that the car, which was a Ford Mustang, had LED lights below the bumper, along with light bars on the windshield, along the running boards, on the back window, and on the sides of the license plate.  He noted that the Mustang also had an emergency light on the dash that was blue and white when activated, something that only a law enforcement officer would possess, a switchboard to activate the lights, and a microphone for the siren.  Finally, yellow crime scene tape with the wording "sheriff line, do not cross" was found in Ruffins' car.

3

police officer. Ruffins testified that he was licensed, but because he was incarcerated at the time of trial, he did not have a copy of his license with him. On the other hand, Det. Brown testified that Ruffins' security business was not a board-licensed security agency. The contract Ruffins provided to Ms. Kennedy has the business name "Guardian Task Force LLC" at the top. There is also a graphic which resembles a badge that also has "Agent Guardian Task Force" on it.

Ruffins was initially charged on September 6, 2022, by bill of information with armed robbery, armed robbery with the use of a firearm, and false personation of a police officer. The bill of information was amended on February 1, 2023, to charge Ruffins with false personation of a police officer, unauthorized entry of an inhabited dwelling, and false imprisonment with a dangerous weapon.

Also on February 1, 2023, the State filed a 404(B) notice informing the defense of its intent to introduce evidence at trial of two prior offenses— Ruffins' 2006 conviction for false personation of a peace officer and his 2016 conviction in Texas for impersonating a public servant. A hearing was held on March 7, 2023, and the trial court found the other crimes evidence to be admissible to establish motive, intent, plan, preparation, knowledge, and absence of mistake or accident.

Trial began on March 22, 2023. A unanimous jury found Ruffins guilty as to count 1, false personation of a peace officer, not guilty as to count 2, unauthorized entry of an inhabited dwelling, and as to count 3, guilty of misdemeanor false imprisonment (rather than the charged offense of false imprisonment with a dangerous weapon).

4

On March 27, 2023, the State filed a habitual offender bill charging Ruffins as a fourth felony offender, with the false personation of a peace officer being his fourth felony. The three prior convictions alleged were 2013 convictions for felony theft and theft of a motor vehicle in Caddo Parish; a 2006 felony theft conviction in Bossier Parish; and a 2007 false personation conviction in Caddo Parish. Ruffins entered a plea of not guilty to the habitual offender bill. Following a hearing on August 16, 2023, the trial court adjudicated Ruffins to be a fourth felony offender. Sentencing delays were waived, and the trial court imposed the mandatory minimum sentence of 20 years at hard labor. The State then dismissed a pending bank fraud charge against Ruffins. On October 18, 2023, the trial court sentenced Ruffins for the false imprisonment conviction to six months in the parish jail, to run concurrently with his other sentence and with credit for time served.

Defendant has appealed his conviction for personation of a peace officer and 20-year hard labor sentence.

## DISCUSSION

### Assignment of Error No. 1: Sufficiency of the Evidence

Ruffins was charged with and convicted of false personation of a peace officer, a violation of La. R.S. 14:112.1(A)(1), which is the impersonation of a peace officer or assumption, without authority, of any uniform or badge by which a peace officer is lawfully distinguished with intent to injure or defraud or to obtain or secure [any] special privilege or advantage.

According to Ruffins, the evidence presented by the State was insufficient to prove beyond a reasonable doubt that he impersonated a peace

5

officer with the intent to injure or defraud or to obtain or secure any special privilege or advantage.

Ruffins points out that although Ms. Kennedy saw him that day, there was no evidence she saw the car Det. Brown testified had been modified. Instead, urges Ruffins, the only issue is whether, in his interactions with Ms. Kennedy, he impersonated a police officer to obtain a special privilege or advantage. Ms. Kennedy testified that Ruffins claimed to be a police officer, but she did not see him wearing a badge or with a written contract with information showing that he was a police officer as opposed to a security guard. Ms. Kennedy testified that Ruffins was seeking a contract for his security company as a security guard, not as a police officer.

Ruffins asserts that none of the badges or clothing introduced into evidence contain markings indicating or representing that he was a peace officer. The contract clearly shows it is from Guardian. His badge says Guardian, not Shreveport Police Department. According to Ruffins, the State failed to establish beyond a reasonable doubt that he led Ms. Kennedy to believe that he was a peace officer. He had no insignia indicating an affiliation with any police department, and the proposed contract was clearly from Guardian. Therefore, his conviction for false personation of a peace officer should be reversed.

On the other hand, the State contends that the evidence was sufficient to support the defendant's conviction for false personation of a peace officer, noting the following evidence.

Ms. Kennedy testified on direct and cross-examination that Ruffins introduced himself as an SPD officer when he first came to her office at the apartment complex. According to the State, Ruffins' purpose in going to

Ms. Kennedy's office and representing himself as an SPD officer was to secure a special advantage or privilege, which was a signed contract by which he would receive payment for providing "Specialized Law Enforcement Security" at the Cooper Road Plaza Apartments.

Ms. Kennedy's testimony alone was sufficient evidence from which the jury could have found beyond a reasonable doubt that Ruffins impersonated a peace officer with the intent to obtain or secure a special privilege or advantage, thus satisfying the requirements of La. R.S. 14:112.1.

Additionally, the record contains evidence of Ruffins' "police-like" attire and gear, which led Ms. Kennedy to believe that he was an SPD officer. Ms. Kennedy stated that she gave Ruffins the complex's rent roll with tenants' information based on her belief that he was a police officer. The testimony, photographs, and physical evidence were sufficient to support the jury's determination that Ruffins, without authority, assumed the uniform or badge by which a peace officer is lawfully distinguished.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Captville*, 448 So. 2d 676 (La. 1984). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-

0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

False personation of a peace officer is a specific intent crime. *State v. Nelson*, 367 So. 2d 317 (La. 1979); *State v. Barton*, 46,792 (La. App. 2 Cir. 12/14/11), 80 So. 3d 713, *writ denied*, 12-0248 (La. 8/22/12), 97 So. 3d 366; *State v. Hayden*, 97-1070 (La. App. 5 Cir. 2/25/98), 707 So. 2d 1360, *writ denied*, 98-0811 (La. 9/04/98), 723 So. 2d 960; *State v. Mayberry*, 95-2013 (La. App. 4 Cir. 9/4/96), 680 So. 2d 722. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434; *State v. Anderson*, 55,550 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1081, *writ denied*, 24-00779 (La. 10/23/24), --- So. 3d ---, 2024 WL 4551497.

In *State v. Mayberry*, *supra*, on March 13, 1995, the defendant, Josh Mayberry, was charged by bill of information with false personation of a peace officer, in violation of La. R.S. 14:112.1. He pled not guilty, and after trial, a six-member jury found him guilty as charged. On May 5, 1995, the

8

trial court granted Mayberry's motion for post-verdict judgment of acquittal, which was appealed by the State. The facts adduced at trial are as follows.

On November 22, 1994, Mayberry went into the Crescent Gun Shop in New Orleans, Louisiana, wearing a black New Orleans Police Dept. ("NOPD") t-shirt, a medallion that resembled a NOPD badge, and blue pants with a light blue stripe. The store clerk, Emelda Corales, testified that she asked Mayberry where he worked, and he told her that he worked in the Fifth District for the NOPD. When Ms. Corales informed him that the stripe on his pants was the wrong color and improperly placed, his response was that his commanding officer had not objected. *Id.*, 95-2013, p. 1, 680 So. 2d at 723. Ms. Corales, however, was suspicious, and she called the NOPD's personnel office, who informed her that Mayberry was neither an officer nor a recruit. When Mayberry returned to the Crescent Gun Shop and tried to purchase a pair of NOPD pants correctly striped, Ms. Corales notified the police. Ms. Corales identified the defendant in court. *Id.*

On appeal, the State argued that the intent to defraud or obtain a special privilege or advantage could be inferred, without more, from the attempt to purchase pants like those worn by the NOPD. The Fourth Circuit cited *State v. Nelson*, *supra*, wherein the Louisiana Supreme Court opined that because the defendant was performing an act that could be performed by a private citizen, i.e., carrying an unconcealed weapon, no intent to obtain a special privilege or advantage could be inferred from the defendant's actions. In *State v. Mayberry*, *supra*, the Fourth Circuit was being asked by the State to infer "an amorphous intent in an unspecified criminal act in the future" from the defendant's act of impersonating an officer and being present in a store to purchase pants worn by NOPD officers. *Id.*, 95-2013, p.

9

4, 680 So. 2d at 724. In affirming the trial court's grant of the defendant's motion for post-verdict motion for acquittal, the appellate court wrote:

> It might be asserted that the right to purchase pants identical to those worn by New Orleans Police Department officers is itself the advantage Mayberry intended to obtain. It is true that he was not sold the pants and that the police were summoned. However, it was not proved at trial that the pants may only be purchased by the NOPD or that NOPD officers receive any preferential treatment at the Crescent Gun Shop. Ms. Corales testified that the Crescent Gun Shop is open for business to the general public. She did not testify that the pants were available for sale to the general public. She did not testify that the pants were available for sale only to NOPD officers. She did not testify that it was customary for her to verify the police affiliation of her customers. . . .
>
> The State neglected to show that the sale of Cook County pants with royal blue stripes extending from cuffs to pockets was an advantage available only to persons known or proven to be NOPD officers. The State did not prove that Mayberry had the intent to obtain or secure any other special privilege or advantage. Absent evidence from which it can be inferred that Mayberry had the intent to injure or defraud or to obtain or secure any special privilege or advantage, his impersonation does not amount to the crime of false personation of a police officer as defined in La. R.S. 14:112.1(A).

*State v. Mayberry*, 95-2013, pp. 4-5, 680 So. 2d at 724.

Raymond Hayden, one of the defendants in *State v. Hayden*, *supra*, was charged with and convicted of false personation of a peace officer. His conviction and sentence were affirmed by the appellate court. At trial, the following facts were established.

Paul Machadie testified that he worked as a sales clerk at a gas station on Barataria Blvd. in Marrero, Louisiana, on October 23, 1995, and it was the station's policy to give away free soft drinks or coffee and free car washes to police officers as a courtesy. Machadie further stated that he was not allowed to give away such courtesies to "bounty hunters." He identified Hayden as the person who drove up to the store on the night in question in a

white Ford Crown Victoria and came into the store asking for a wash for his police car. Machadie stated that the car looked like a police vehicle because it had blue lights in its back window. The witness identified photos of the vehicle and the defendants.[3] *Id.*, 97-1070, pp. 1-2, 707 So. 2d at 1361.

After Machadie gave Hayden the "police wash," he got a drink and told his friend to come inside and get a drink also. Neither man paid for the beverages. Machadie related that he had seen the two on previous occasions when they had come inside to ask for a wash for their police car. According to Machadie, it was store policy to write down the number of the wash and whether it was for the police. The two men were wearing black fatigues similar to those worn by the Jefferson Parish Street Crimes unit which was just across the street from the gas station. They also had guns and badges so the clerk assumed they were street crimes officers. *Id.*, 97-1070, p. 3, 707 So. 2d at 1362.

On that same night, two deputies stopped at the service station to purchase cigarettes and observed two men exiting the station dressed the same way they were. Captain Shane Guidry stated that he did not recognize either man as being from a police agency. As the defendants finished in the car wash, Cpt. Guidry noticed that their vehicle, a white Ford Crown Victoria with blue lights and a prisoner cage divider, had an expired Alabama license plate. A traffic stop was made. Capt. Guidry read the two men's chest badges were printed with the words "United States Fugitive Recovery Task Force." Both men told the officers that they worked for Louisiana Bail Bonds Recovery Agency. Cpt. Guidry then asked the men

---

[3] There was a passenger in the car who was also charged with and convicted of false personation of a peace officer in this case.

for identification. Hayden and his co-defendant produced identification that "in some way" identified them as "State of Louisiana Recovery Agent" or "Fugitive Recovery Agent." According to the men, they ordered their badges out of a magazine and had their IDs made at Kinko's Copy Service. The men were arrested for impersonating law enforcement officers. *Id.*, 97-1070, pp. 3-5, 707 So. 3d 1361-62.

The appellate court found that the State introduced sufficient evidence to establish the requisite specific intent. Although the defendant testified that he did not go into the store that night, the clerk testified otherwise—that Hayden asked for a wash for his police car and got a drink for which he did not pay. There was also the defendant's testimony that he and his co-defendant wore uniforms similar to the Street Crimes officers to cause others to assume they were law enforcement, and that the purpose of the blue light was to use to signal for help from the police in case they got into trouble in the projects doing fugitive recovery. *State v. Hayden*, 97-1070, p. 13, 707 So. 2d at 1365.

The defendant in *State v. Barton*, *supra*, was found guilty by a jury of false personation of a peace officer for committing a series of actions at his apartment complex, including: dressing in police clothing and carrying handcuffs and weapons; purposely leading residents and the manager of the complex to believe that he was employed as a law enforcement officer; driving a vehicle outfitted like a police cruiser; and ordering a resident to follow him and surrender his driver's license so that he could "check for warrants." *Id.*, 46,792, p. 2-6, 80 So. 3d at 715-717.

Testimony at trial established that Barton approached Nancy Jowers, the property manager of the complex, to express his interest in becoming a

courtesy officer for the complex. Ms. Jowers testified that courtesy officers received a reduction in rent for their services but the position was reserved for licensed law enforcement officers. Barton told her that he worked for the FBI. Ms. Jowers was unable to recall what clothing Barton had on that day, but she noticed he had on a badge and was driving a Ford Crown Victoria with "police-looking" lights mounted on it. *Id.*, 46,792, p. 3, 80 So. 3d at 716. Officers found a police cage in the Crown Victoria, which was also equipped with a push bar on its front bumper, spotlights on the side of the front doors, and a decal on the side with a United States seal that read "Fugitive Recovery Agent." Inside the vehicle were a nightstick, a one-way police scanner, items from a coroner's office, and handcuffs, as well as toggles and switches used to control a police light bar. The defendant told the officers who performed the search of his vehicle that he and his "partner" posed as police officers to make traffic stops, during which they would take drivers' licenses and pretend to check for outstanding warrants. They also took money and drugs from some of the motorists they stopped. Barton's girlfriend gave the officers several items of his clothing, which included some that were very similar or identical to those worn by Shreveport Police Department officers. *Id.*, 46,792, pp. 4-5, 80 So. 3d at 716-17. In affirming Barton's conviction, this Court noted:

> Barton would dress in police clothing and carry accessories, such as handcuffs and weapons. He purposely led the complex manager and others to believe he was employed as a law enforcement officer. He drove a vehicle outfitted like a police cruiser. Specifically, when confronted by [a resident's boyfriend] about the entry into [his girlfriend's] apartment, Barton, wearing police garb and a badge, ordered [the boyfriend] to follow him and surrender his driver's license so that defendant could "check for warrants." Defendant also wore police clothing when he pounded on Ms. Vallot's door demanding she "open up," and then entered the apartment

13

without consent. Cody and Clint Hooker testified about defendant's intimidation when he confronted them about playing music in the parking lot. This testimony, along with a myriad of photographs and other physical evidence, is more than sufficient, viewed in the light most favorable to the prosecution, to support a conviction for false personation of a peace officer.

*State v. Barton*, 46,794, p. 6, 80 So. 2d at 717.

In the instant case, viewing the evidence in the light most favorable to the prosecution pursuant to the standard set forth in *Jackson v. Virginia*, *supra*, it is clear that there was insufficient evidence from which the jury could have found that Ruffins was guilty of false personation of a peace officer. The problem in this case is that the State failed to establish that Ruffins tried to obtain or secure any special privilege or advantage available ***only to peace officers or law enforcement***. There was absolutely no testimony or evidence whatsoever that someone seeking to work security at the apartment complex was required to be a law enforcement officer. In fact, Ms. Kennedy testified that Ruffins was trying to get a contract for his security company as a security guard, not as a police officer. Therefore, the State did not meet its burden of proving the defendant's guilt beyond a reasonable doubt. Accordingly, Ruffins' conviction for false personation of a peace officer is reversed, an acquittal is hereby rendered, his adjudication as a fourth felony offender is reversed, and his 20-year hard labor sentence is vacated and set aside.

**Assignments of Error Nos. Two and Three**

Based on our finding that the evidence does not support the defendant's conviction for false personation of a peace officer, we pretermit a discussion of these assignments of error.

14

**CONCLUSION**

For the above-stated reasons, the defendant's conviction for false personation of a peace officer is reversed and a judgment of acquittal is hereby rendered, his adjudication as a fourth felony offender is reversed, and his 20-year sentence as a fourth felony offender is reversed and set aside.

**CONVICTION REVERSED; JUDGMENT OF ACQUITTAL ENTERED; HABITUAL OFFENDER ADJUDICATION REVERSED; SENTENCE REVERSED AND SET ASIDE.**