# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #031

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2025** are as follows:

**PER CURIAM:**

*2024-K-01512*       *STATE OF LOUISIANA   VS.   REGINALD RUFFINS (Parish of Caddo)*

REVERSED AND REMANDED. SEE PER CURIAM.

**SUPREME COURT OF LOUISIANA**

**No. 2024-K-01512**

**STATE OF LOUISIANA**

**VS.**

**REGINALD RUFFINS**

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Caddo

**PER CURIAM**

We granted writs to determine whether the court of appeal correctly vacated defendant's conviction for false personation of a peace officer, *see* R.S. 14:112.1, on grounds of insufficient evidence. After reviewing the record alongside the parties' arguments, we find the court of appeal erred as a matter of law. We therefore reverse its decision, reinstate defendant's conviction and twenty-year habitual offender sentence, and remand to the court of appeal for consideration of the pretermitted assignments of error.

The evidence at trial included testimony from law enforcement officers who investigated defendant's actions and verified he was not a law enforcement officer. Testimony also established that defendant drove a Ford Mustang outfitted with white and blue lights (like those mounted on police cars), an interior console mount for a laptop, along with a siren and PA system; and that he had a "rig belt" like those worn by on-duty police officers, a ballistic vest, a tactical uniform with "agent" written on the back and an official-looking patch with the Louisiana seal on the front, rolls of yellow tape marked with "do not cross–crime scene–sheriff's line," handcuffs, a flashlight, a collapsible baton, a gold badge bearing an identification number, a mace gun, a taser, 9mm ammunition, and a body camera.[1]

---

[1] Testimony about his possessions does not indicate whether an actual firearm was recovered, but eyewitness testimony indicated defendant was armed as he interacted with others while dressed like a police officer.

Footage from defendant's body camera depicts an incident in which he and two other men, all three of them outfitted in what appeared to be police uniforms, entered the private residence of Ms. Shiniqua Stewart and her partner and their four young children. That footage was played for the jury. From the perspective of the defendant's chest facing outward, it shows defendant and two other uniformed men commanding Ms. Stewart and her partner to comply with their orders, to produce her gun, which she had in her apartment. As defendant and his companions handcuffed Ms. Stewart and her partner, the three uniformed men examined the gun, chiding Ms. Stewart that if it was determined to be a stolen gun, she would go to jail.

In addition to testimony from law enforcement officers, which established that defendant was previously convicted of impersonating law enforcement, the State presented testimony from Ms. Stewart, whose account was consistent with the body camera footage. Ms. Stewart testified that at about 6:00 p.m. on June 22, 2022, the defendant and his companions knocked on her door in the Cooper Road Plaza Apartments, identified themselves as Shreveport Police, and were wearing official-looking badges, shirts, vests, and pants resembling police attire, and had guns at their sides. Ms. Stewart testified that she allowed the men to come inside her home only because she believed they were Shreveport Police, as they said. Ms. Stewart testified that defendant handcuffed her while asking her about her gun and that she complied because she "always compl[ies] with police officers." She explained that since this incident she no longer trusts police because of how she was deceived that day.

As for the defendant's presence in the Cooper Road Plaza Apartment complex, the property manager, Ms. Erica Kennedy, testified. She explained that in June 2022, the defendant had repeatedly approached her in the property's office, visiting at least four times, to request that she sign a proposed contract for him to

2

provide paid security for the apartment complex. Ms. Kennedy testified that defendant was dressed like a police officer when he first visited and that he introduced himself as a Shreveport Police Officer. When Ms. Kennedy told him she was not authorized to approve his contract for hire, defendant continued to come back to her office, finally telling her "he wanted to go into some of the properties" and asking for a copy of the rent roll (which lists tenants and authorized occupants). Ms. Kennedy explained that she gave the rent roll to defendant because she "always give[s] the police officers the rent roll" and she was under the impression that defendant was a police officer.

Ms. Kennedy testified that on June 22, 2022, defendant contacted her again and let her know he was planning to enter some apartments with his team. She testified she told him "okay" but did not give him permission to enter any units and, had she known he was not a police officer, she would not have given him the rent roll nor permitted his entering any of the apartments.

Defendant testified on his own behalf and admitted to entering Ms. Stewart's apartment and handcuffing her but denied ever telling Ms. Stewart or Ms. Kennedy that he was a police officer or having a gun inside Ms. Stewart's apartment. He testified that his security agency is licensed in Louisiana but presented no proof of such. In contrast, Shreveport Police Department Detective Jeff Brown testified that defendant's business, Guardian Task Force, is not licensed in this state.

Despite this evidence, the second circuit reversed the false personation conviction, entered a judgment of acquittal, and vacated the twenty-year sentence. *State v. Ruffins*, 55,952 (La. App. 2 Cir. 11/20/24), 401 So.3d 903. The court found insufficient evidence of guilt because, as the panel explained:

> The problem in this case is that the State failed to establish that Ruffins tried to obtain or secure any special privilege or advantage available

3

only to peace officers or law enforcement. There was absolutely no testimony or evidence whatsoever that someone seeking to work security at the apartment complex was required to be a law enforcement officer. In fact, Ms. Kennedy testified that Ruffins was trying to get a contract for his security company as a security guard, not as a police officer. Therefore, the State did not meet its burden of proving his guilt beyond a reasonable doubt.

*Ruffins*, 55,952, p. 14, 401 So.3d at 911.

Appellate review for constitutional sufficiency of the evidence is limited by the due process standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See State v. Rosiere*, 488 So.2d 965, 968 (La. 1986). Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Regarding this familiar standard, the United States Supreme Court has emphasized that the:

> Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a "meaningful opportunity to defend" against the charge against him and a jury finding of guilt "beyond a reasonable doubt." The reviewing court considers only the "legal" question "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." That limited review does not intrude on the jury's role "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

*Musacchio v. United States*, 577 U.S. 237, 243, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016) (internal citations omitted).

The crime of false personation of a peace officer is committed by the performance of one or more of the following acts with the intent to injure or defraud or to obtain or secure any special privilege or advantage:

4

(1) Impersonating any peace officer or firefighter or assuming, without authority, any uniform or badge by which a peace officer or firefighter is lawfully distinguished.

(2) Performing any act purporting to be official in such assumed character.

(3) Making, altering, possession, or use of a false document or document containing false statements which purports to be a training program certificate or in-service training certificate or other documentation issued by the Council on Peace Officer Standards and Training, pursuant to R.S. 40:2405, which certifies the peace officer has successfully completed the requirements necessary to exercise his authority as a peace officer.

(4) Equipping any motor vehicle with lights or sirens which simulate a law enforcement vehicle.

R.S. 14:112.1(A).

As set out above, the record contains evidence to support rational determinations that the defendant took the actions described in subsections (1), (2), and (4) as defined above in R.S. 14:112.1. Thus, the only other issue is whether the evidence also shows that he took those actions "with the intent to injure or defraud or to obtain or secure any special privilege or advantage."

The court of appeal's determination and the parties' arguments center on "any special privilege or advantage." Defendant submits the second circuit correctly found the evidence lacking because it does not prove beyond a reasonable doubt that he sought a special privilege or advantage. In contrast, the State argues it has proven defendant's guilt beyond a reasonable doubt because the evidence shows he acted with intent to secure a special privilege or advantage when he sought to be hired to work paid security for the Cooper Road Plaza apartments and falsely held himself out to be a police officer in his efforts to secure that work. In the State's view, it is immaterial whether the apartment complex would have required its security

5

personnel to be law enforcement because the plain language of R.S. 14:112.1 says nothing to qualify the special privilege or advantage as being one only available to law enforcement. Rather, the State contends, the statute is clear that the intent to secure "any" special privilege or advantage suffices.

We agree with the State. The appellate court erred by focusing its analysis on whether a person seeking to work security at the apartment complex needed to be in law enforcement. The State rightly submits this question is not decisive under R.S. 14:112.1. The court of appeal emphasized the lack of evidence that defendant tried to secure a privilege or advantage which is *only available to law enforcement* but the statute does not require that the special privilege or advantage being sought is one restricted to law enforcement.

It is well established that criminal statutes are subject to strict construction under the rule of lenity. *State v. Carr,* 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274. Criminal statutes are therefore given narrow interpretation and any ambiguity in the provisions of a statute is resolved in favor of the accused. *State v. Becnel,* 93-2536, p. 2 (La.5/31/96), 674 So.2d 959, 960. It is also true, however, that "where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit." *State v. Petitto*, 10-0581 (La. 3/15/11), 59 So.3d 1245, 1250 (citing *State v. Freeman*, 411 So.2d 1068, 1073 (La. 1982) and R.S. 1:4).

We see no ambiguity in the definition of the offense of false personation of a peace officer and are therefore bound to apply the law as it is written. More specifically, we see no support in the statute's plain language for the additional requirement superimposed by the court of appeal to limit the law's application only to those who impersonate law enforcement with intent to secure a special privilege or advantage that the evidence proves is one only available to law enforcement.

6

Instead, it simply requires the intent to injure, defraud, or to obtain or secure *any* special privilege or advantage while under the guise of being an officer of the law. Because the language of the statute dictates what must be proven, and its terms are clear that this offense is committed when a person impersonates a police officer with "the intent to injure or defraud or to obtain or secure any special privilege or advantage," *see* R.S. 14:112.1(A), the court of appeal improperly inserted a new element into the law, which the legislature did not include.

Furthermore, a review of the jurisprudence demonstrates that the evidence is sufficient to support the verdict here. This case is not like those where the evidence was found lacking. In *State v. Mayberry*, 95-2013 (La. App. 4 Cir. 9/4/96), 680 So.2d 722, and in *State v. Nelson*, 367 So.2d 317 (La. 1979), the defendants falsely posed as police but neither took steps seeking any special privileges or advantages. Instead, Mayberry sought to purchase pants like those worn by NOPD officers, but there was nothing from which to infer he was seeking any kind of preferential treatment or advantage by falsely holding himself out as police to buy the pants at a store which was open to the public. *Mayberry*, 95-2013, pp. 3-5, 680 So.2d at 724. In *Nelson*, the defendant lied and said she was a police officer, but there was no evidence that she did anything to gain a special privilege or advantage; instead, she merely exercised her right to carry an unconcealed gun. *Nelson*, 367 So.2d at 318. In other words, although Mayberry and Nelson both lied about being police officers, just as the evidence indicates the instant defendant did, they did not commit the crime of false personation because their actions only evinced intent to do things they could have just as easily done presenting themselves as civilians: purchasing pants and carrying a gun. Because neither sought to obtain any special privilege or advantage, there was insufficient evidence to convict.

In contrast, in cases where the evidence was found sufficient to convict, the defendants went further in their efforts and sought special privileges or advantages facilitated by their false claims to be law enforcement. In *State v. Barton*, 46,792 (La. App. 2 Cir. 12/14/11), 80 So.3d 713, *writ denied*, 12-0248 (La. 8/22/12), 97 So.3d 366, the defendant told his apartment manager and neighbors that he was a police officer, he wore tactical uniforms, and he drove a car outfitted with lights and a police cage. The evidence was sufficient to convict him because it supported a rational conclusion that he used this false persona with intent to secure the advantage of compensated security work for the apartment complex, and as a ruse for obtaining the special privilege of entering a private residence while falsely identifying himself as a police officer and claiming to check for outstanding warrants. *Barton*, 46,792, pp. 3-4, 80 So.3d at 715-16.

In *State v. Hayden*, 97-1070 (La. App. 5 Cir. 2/25/98), 707 So.2d 1360, *writ denied*, 98-0811 (La. 9/4/98), 723 So.2d 960, the evidence was sufficient because it showed the defendant falsely held himself out as law enforcement with the intent to secure the special privileges of free car washes and drinks from a gas station. *Hayden*, 97-1070, p. 13, 707 So.2d at 1365.

In *State v. Gordon*, 95-1247 (La. App. 4 Cir. 1/19/96), 668 So.2d 462, *writ granted*, 96-0427 (La. 5/10/96), 672 So.2d 669 (granting writs on a sentencing related claim), the evidence was sufficient because the defendant presented an altered identification card claiming to be a police officer when he was pulled over in a traffic stop. Because it could rationally be inferred from this action that he misled the officer to believe he was police with the intent to secure preferential treatment, *i.e.*, a special privilege or a more advantageous outcome, the conviction was sound. *Gordon*, 95-1247, p. 3, 668 So.2d at 464.

8

Where the evidence has been found sufficient it has been because it supported a reasonable inference that the defendant's misrepresentation to be a police officer was made with the intent to secure some kind of special treatment or access, *i.e.*, a special privilege or advantage. The actions to secure such benefits, privileges, or advantages are what transformed their false claims to be police officers from protected speech under the First Amendment into criminal conduct punishable under R.S. 14:112.1.

Here, the evidence viewed in the light most favorable to the State supports the jury's rational determination that defendant was falsely posing as a police officer in and around the Cooper Road Plaza apartment complex and that he was doing so with specific intent to secure the advantage of paid security work for his firm. Although there is no evidence that the complex required its security personnel to be members of law enforcement, it is nonetheless reasonable to infer that defendant lied about being a police officer to set himself apart from the general citizenry and/or any competing security firms and thereby increase his chances of being hired and paid.

We further find that defendant used a false police persona to secure a special privilege when he obtained a copy of the apartment rent roll, which the evidence shows Ms. Kennedy would not have given him but for his false representation that he was a Shreveport police officer. Moreover, the evidence shows the defendant again acted with intent to obtain a special privilege when he lied to Ms. Stewart and identified himself as a police officer to facilitate his entrance into her private residence; which misrepresentation was the only reason Ms. Stewart did not object to him entering her home, and the only reason she complied with his demands when he handcuffed and interrogated her about her gun ownership—further special privileges unavailable to the general public that defendant sought and exercised

while falsely claiming to be a police officer.

In sum, we find the evidence amply supports the jury's rational decision that the defendant here, much like the defendant in *Barton*, sought special privileges and advantages as a part of a ruse posing as a police officer. Contrary to the second circuit's analysis, which focused on an inquiry not tethered to the requisite elements of the statute, we find the evidence sufficient to conclude that defendant is guilty of committing the crime as it is defined statutorily. He impersonated a police officer with the intent to obtain the advantage of being hired for security work; for the special privilege of obtaining the apartment rent roll, which he would not have otherwise had access to; and he exercised the special privileges of entering a private residence and handcuffing someone based on his false claim to be a police officer.[2] The jury's guilty verdict was amply supported. We therefore reverse the lower appellate court's judgment, reinstate the conviction and habitual offender sentence, and remand to the court of appeal for consideration of the pretermitted claims.

**REVERSED AND REMANDED**

---

[2] Though the state has not argued as much, the evidence is sufficient to prove the offense in at least one additional fashion, in that it shows defendant sought to defraud apartment management with the intent to secure employment under false pretenses. *See* R.S. 14:112.1(A). Defendant intentionally misled the manager about his identity with intent to persuade her to hire him or approve his proposed contract which specified he would be providing "specialized law enforcement" security services. Though the offense statute does not define the term "defraud," other provisions of law are instructive. For example, La.C.C. art. 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. *Pontchartrain Nat. Gas Sys. v. Texas Brine Co., LLC*, 22-0594 (La. App. 1 Cir. 1/20/23), 361 So.3d 491, 502, *writ denied*, 23-0255 (La. 6/7/23), 361 So.3d 983. Louisiana law recognizes causes of action for fraud affecting formation of a contract. *See Stutts v. Melton*, 13-557 (La. 10/15/13), 130 So.3d 808, 813-15.